**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **MARK DRUST, INDIVIDUALLY AND** | § | |
| **AS A REPRESENTATIVE OF A** | § | |
| **CLASS OF SIMILARLY SITUATED** | § | |
| **PERSONS, AND ON BEHALF OF** | § | |
| **THE SOUTHWEST RESEARCH** | § | |
| **INSTITUTE RETIREMENT PLAN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 5:23-cv-00767-XR** |
| | § | |
| **SOUTHWEST RESEARCH INSTITUTE,** | § | **ORAL ARGUMENT REQUESTED** |
| **AND JOHN DOES 1-30,** | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANT SOUTHWEST RESEARCH INSTITUTE'S**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ......................................................................................................... 1

II.     STATEMENT OF FACTS ............................................................................................ 4

      A.      Southwest Research and the Plan ................................................................... 4

      B.      The Plan's Investments Options ..................................................................... 5

      C.      Plaintiff's Claims .......................................................................................... 6

III.    ARGUMENT................................................................................................................. 6

      A.      Legal Standard .............................................................................................. 6

      B.      Plaintiff's Allegations That Three Plan Investment Options Underperformed Do Not State a Claim ........................................................................................... 8

            1.      The Complaint's Performance-Only Allegations Do Not Create an Inference of Imprudence as a Matter of Law as Is Required to Plausibly Allege a Fiduciary-Breach Claim. ........................................................ 8

            2.      Plaintiff's Underperformance Allegations Fail for Additional Reasons, Each of Which Independently Compels Dismissal............................. 12

                  a)      Plaintiff's Underperformance Allegations Fail Because They Do Not Offer Meaningful Comparators for the Challenged Funds. ............ 12

                  b)      Plaintiff Does Not Allege Substantial Underperformance Sufficient to Support an Inference of Imprudence................................. 15

                  c)      Plaintiff's Underperformance Allegations Ignore the Long-Term Nature of the Challenged Investments. .................................................. 16

      C.      Plaintiff's Allegations That Four Plan Investment Options Were "Too Expensive" Does Not State a Claim ................................................................. 17

            1.      The Complaint's Criticism That Four Plan Investments Were More Expensive Than Other Funds Does Not Create an Inference of Imprudence Sufficient to Allege a Violation of ERISA. ................................... 17

            2.      The Complaint Does Not Allege Facts Demonstrating That the Comparator Funds Are Meaningful Benchmarks for the Challenged Funds............................................................................................. 19

      D.      Plaintiff's Allegation That the Plan Offered TIAA-Affiliated Investments Does Not Create an Inference of Imprudence......................................................... 22

      E.      Plaintiff Fails to State a Failure-to-Monitor Claim. ......................................... 23

IV.     CONCLUSION.............................................................................................................. 24

**TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Albert v. Oshkosh Corp.*,
  47 F.4th 570 (7th Cir. 2022) ........................................................................................*passim*

*Anderson v. Advance Pubs., Inc.*,
  2023 WL 3976411 (June 13, 2023) ..................................................................................... 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................... 7, 15

*Bekker v. Neuberger Berman Grp. LLC*,
  2018 WL 4636841 (S.D.N.Y. Sept. 27, 2018) .................................................................. 16

*Beldock v. Microsoft Corp.*,
  2023 WL 3058016 (W.D. Wash. Apr. 24, 2023) .................................................... 3, 11, 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................ 7

*Bracalente v. Cisco Syst., Inc.*,
  2023 WL 5184138 (N.D. Cal. Aug. 11, 2023) .................................................................. 11

*Camera v. Dell, Inc.*,
  2014 WL 960897 (W.D. Tex. Feb. 26, 2014) .................................................................... 24

*Cho v. Prudential Ins. Co. of Am.*,
  2021 WL 4438186 (D.N.J. Sept. 27, 2021) ....................................................................... 15

*Davis v. Washington Univ. in St. Louis*,
  960 F.3d 478 (8th Cir. 2020) .......................................................................................*passim*

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014) ....................................................................................................... 2, 7

*Forman v. TriHealth, Inc.*
  40 F.4th 443 (6th Cir. 2022) .................................................................................... 2, 9, 10

*Forman v. TriHealth, Inc.*,
  563 F. Supp. 3d 753 (S.D. Ohio 2021) .............................................................................. 16

*Funk v. Stryker Corp.*,
  631 F.3d 777 (5th Cir. 2011) ............................................................................................. 10

*Gonzales v. Northwell Health, Inc.*,
  2022 WL 4639673 (S.D.N.Y. Sept. 30, 2022) .................................................................. 15

*Hall v. Cap. One Fin. Corp.*,
  2023 WL 2333304 (E.D. Va. Mar. 1, 2023)......................................................... 12, 15, 17, 18

ii

*Hecker v. Deere & Co.*,
   556 F.3d 575 (7th Cir. 2009) ..................................................................................*passim*

*Hughes v. Nw. Univ.*,
   142 S. Ct. 737 (2022) ...........................................................................................*passim*

*In re LinkedIn ERISA Litigation*,
   2021 WL 5331448 (C.D. Cal. Nov. 16, 2021) ................................................................ 15

*Jenkins v. Yager*,
   444 F.3d 916 (7th Cir. 2006) ........................................................................................... 9

*JSW Steel (USA) Inc. v. Nucor Corp.*,
   586 F. Supp. 3d 585 (S.D. Tex. 2022)............................................................................. 7

*Kirschbaum v. Reliant Energy, Inc.*,
   526 F.3d 243 (5th Cir. 2008) ........................................................................... 2, 3, 7, 10

*Laboy v. Bd. Of Trs. Of Bldg. Serv.*,
   513 F. App'x 78 (2d Cir. 2013)....................................................................................... 9

*Larson v. Allina Health Sys.*,
   350 F. Supp. 3d 780 (D. Minn. 2018) ........................................................................... 13

*Lee v. Verizon Commc'ns, Inc.*,
   837 F.3d 523 (5th Cir. 2016) .......................................................................................... 7

*Locascio v. Fluor Corp.*,
   2023 WL 320000 (N.D. Tex. Jan. 18, 2023).......................................................... 8, 11, 13

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
   594 F.3d 383 (5th Cir. 2010) .......................................................................................... 4

*Luckett v. Wintrust Fin. Corp.*,
   2023 WL 4549620 (N.D. Ill. July 14, 2023) ............................................................. 11, 15

*Matney v. Barrick Gold of N. Am.*,
   2023 WL 5731996 (10th Cir. Sept. 6, 2023)............................................................ 2, 13, 14

*Matousek v. MidAmerican Energy, Co.*,
   51 F.4th 274 (8th Cir. 2022)..................................................................... 12, 13, 14, 15

*Meiners v. Wells Fargo*,
   898 F.3d 820 (8th Cir. 2018) ...............................................................................*passim*

*Metler v. Graham*,
   112 F.3d 207 (5th Cir. 1997)........................................................................................... 8

*Norris v. Hearst Trust*,
   500 F.3d 454 (5th Cir. 2007).......................................................................................... 10

*PBGC ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013)........................................................................................... 18

*Perez v. Bruister,*
    823 F.3d 250 (5th Cir. 2016) ................................................................................ 24

*Perkins v. United Surgical Partners Int'l Inc.,*
    2022 WL 824839 (N.D. Tex. Mar. 18, 2022) ................................................. 8, 13, 18, 19

*Singh v. RadioShack Corp.,*
    882 F.3d 137 (5th Cir. 2018) ........................................................................... 23, 24

*Smith v. CommonSpirit Health,*
    37 F.4th 1160 (6th Cir. 2022) .............................................................................*passim*

*Wehner v. Genentech, Inc.,*
    2021 WL 507599 (N.D. Cal. Feb. 9, 2021) ....................................................... 13, 15

*White v. Chevron Corp.,*
    2017 WL 2352137 (N.D. Cal. May 31, 2017) .................................................. 3, 9, 10, 18

**FEDERAL STATUTES**

Employee Retirement Income Security Act ("ERISA"),
    29 U.S.C. §§ 1001-1461 ...................................................................................*passim*

Defendant Southwest Research Institute ("Southwest Research"), by its counsel and in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure and Local Rule CV-7, respectfully moves the Court to dismiss Plaintiff's Complaint (the "Complaint") because Plaintiff has failed to state a claim upon which relief can be granted. Southwest Research requests oral argument on this Motion.

## I.    INTRODUCTION

Southwest Research is a nonprofit science and technology research organization headquartered in San Antonio, Texas. Southwest Research offers its employees a broad suite of benefits, including the Southwest Research Institute Retirement Plan (the "Plan"), which allows every regular employee to save for retirement by investing a portion of their income in tax-advantaged accounts. Employees can select their preferred investments from a menu of options including a suite of target-date funds, an array of mutual funds, and certain variable and fixed annuity options.

Like many employers, Southwest Research also contributes to its employees' retirement accounts. However, whereas many employers "match" a percentage of their employees' contributions—if they contribute at all—Southwest Research makes a defined contribution as a percentage of the employee's base wages regardless of whether the employee contributes anything. As a result, Southwest Research contributes more to the Plan for the employees than the employees contribute to the Plan for themselves, creating a generous retirement package for employees.

Plaintiff Mark Drust ("Plaintiff"), a participant in the Plan, now contends this was not enough. Plaintiff alleges that Southwest Research breached its fiduciary duty of prudence under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461, by including seven allegedly "imprudent" investment options in the Plan's menu of more than 25 investments:

- Plaintiff alleges that three actively managed Plan investment options (out of over a

dozen in the Plan) performed poorly compared to their benchmarks and a few other cherry-picked funds available in the market.

- Plaintiff alleges that four index options offered by the Plan cost more than two or three other index funds that he claims are similar.

These allegations fail to state an actionable claim under ERISA and should be dismissed.

ERISA's duty of prudence is rooted in process, not results. *See Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 253 (5th Cir. 2008). For that reason, the Supreme Court has emphasized that, even at the pleadings stage, district courts "must give due regard to the range of reasonable judgments a fiduciary may make," *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022), so that Rule 12(b)(6) remains an "important mechanism" for "weeding out meritless" claims against ERISA plan fiduciaries, *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). Here, the Complaint is devoid of allegations about Southwest Research's fiduciary process.

Instead, Plaintiff merely alleges that four of the Plan's actively managed investments underperformed. These allegations do not state a claim because, as a matter of law, ERISA does not require fiduciaries to choose the best-performing investments, and allegations of imprudence cannot "come down to simply pointing to a fund with better performance." *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022) (affirming Rule 12(b)(6) dismissal because "merely pointing to another investment that has performed better in a . . . . snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision—largely a process-based inquiry—that breaches a fiduciary duty"). As the Tenth Circuit held just two weeks ago: "[i]t is *uniformly recognized* imprudence cannot be inferred based solely on allegations identifying the existence of . . . . better performing alternative funds." *Matney v. Barrick Gold of N. Am.*, 2023 WL 5731996, at *12 n.15 (10th Cir. Sept. 6, 2023) (collecting cases)

(emphasis added); *see also Forman v. TriHealth, Inc.*,  40 F.4th 443, 448–49 (6th Cir. 2022) (same because "a showing of imprudence cannot 'come down to simply pointing to a fund with better performance'") (citation omitted); *Meiners v. Wells Fargo*, 898 F.3d 820, 822 (8th Cir. 2018) (same because "[n]o authority requires a fiduciary to pick the best performing fund").  To the contrary, "courts across the country have rejected claims for breach of the fiduciary duty of prudence under ERISA where the plaintiffs allege nothing more than underperformance relative to other investment vehicles." *Beldock v. Microsoft Corp.*, 2023 WL 3058016, at *3 (W.D. Wash. Apr. 24, 2023) (collecting cases); *infra* at 8-12.

This result is required by the very nature of investing.  As the Fifth Circuit explained, "[r]etirement investing" involves a "long-term horizon," *Kirschbaum, 526 F.3d at 253-54*, and performance fluctuations are common.  Thus, an allegation of "[p]oor performance, standing alone, is not sufficient to create a reasonable inference that plan administrators failed to" prudently select or monitor investments. *White v. Chevron Corp.*, 2017 WL 2352137, at *20 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x 453, 455 (9th Cir. 2018).  Plaintiff alleges nothing more, and his underperformance claim must be dismissed for this reason alone.  *See* Compl. ¶¶ 44-57.

Plaintiff's challenge to the fees of a few of the Plan's investment options likewise fails.  As a matter of law, "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund." *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009).  Thus, Plaintiff cannot infer an imprudent fiduciary *process* merely by pointing to a few alternative investments—out of thousands in the marketplace—which cost less.  But this is all that is alleged in Plaintiff's barebones Complaint (¶¶ 58-65), and accordingly this claim should be dismissed too.

Lastly, Plaintiff alleges that the Plan's investment options were limited to those offered by the Plan's recordkeeper, Teachers Insurance and Annuity Association of America ("TIAA"), and

suggests there is something improper about such an offering.  *See* Compl. ¶¶ 7-8.  This legal theory

has been consistently rejected.  For instance, the Seventh Circuit affirmed a Rule 12 dismissal of

a similar claim, holding:

> As for the allegation that Deere improperly limited the investment options to Fidelity mutual funds, ***we find no statute or regulation prohibiting a fiduciary from selecting funds from one management company***.  A fiduciary must behave like a prudent investor under similar circumstances; ***many prudent investors limit themselves to funds offered by one company and diversify within the available investment options***.

*See Hecker*, 556 F.3d at 586 (emphasis added); *see also Albert v. Oshkosh Corp.*, 47 F.4th 570,

583 (7th Cir. 2022) (similar).  This Court should do the same.[1]

Because Plaintiff fails to state any claim against Southwest Research, Defendant

respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice.

## II.    STATEMENT OF FACTS[2]

### A.    Southwest Research and the Plan

Southwest Research is a non-profit organization that offers its employees a generous suite

of benefits, including medical, dental, and vision-care plans; various types of insurance; and

personal and medical leave.[3]  In addition to these benefits, Southwest Research offers the Plan to

---

[1] Plaintiff's failure-to-monitor claim in Count II is derivative of the fiduciary-breach claim in Count I, and therefore fails for the same reasons.

[2] This summary comes from Plaintiff's allegations and other publicly available documents—either referenced in the Complaint or central to Plaintiff's claims—that are appropriately considered on a Rule 12(b)(6) motion.  *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).  Here, the Court may properly consider the Plan's summary plan description ("SPD"), Forms 5500 filed with DOL, and investment fund fact sheets and/or prospectuses.  *See, e.g.*, *CommonSpirit Health*, 37 F.4th at 1168 (affirming Rule 12 dismissal and noting that the "district court fairly considered [data] because it was central to [Plaintiff's claim], publicly available, and judicially noticeable"); *Meiners*, 898 F.3d at 823 (affirming Rule 12 dismissal and holding district court properly considered fund prospectuses not attached to the complaint).

[3] *See* Southwest Research Institute, *Southwest Research Institute 2023 Employee Benefits Guide* ("Benefits Guide"), https://www.swri.org/sites/default/files/employee-benefits-guide-inside-sa.pdf (last visited Sept. 15, 2023) (cited by Compl. ¶ 41, n.11).

---

provide Southwest Research employees a source of income during retirement.[4]

Plan contributions come from two sources: employee salary deferrals and employer contributions made directly by Southwest Research.[5] For its part, Southwest Research makes "a defined contribution for regular employees of 9 percent on base earnings up to the Social Security wage base and 11 percent on base earnings above the Social Security wage base."[6] Between 2017 and 2021, Southwest Research contributed more to Plan participants' retirement savings in the form of employer contributions than participants contributed themselves.

B.    **The Plan's Investments Options**

The Plan offers a diverse menu of over 25 investment options from which participants can choose to invest. These include a suite of target-date funds, other mutual funds that cover different asset classes, investment styles (*e.g.*, actively managed funds and passively managed "index" funds), and risk-reward profiles, as well as certain variable and fixed annuity options. The Complaint alleges that the Plan's investment options were all managed by TIAA, the Plan's recordkeeper.

There are fees associated with managing investments, *i.e.,* charges for managing the assets of the investment fund. *Albert*, 47 F.4th at 580 (explaining that "[i]nvestment-management fees . . . . compensate a fund . . . . for designing and maintaining the fund's investment portfolio"). Often the investment management fee is shown as an "expense ratio" for each fund, stated as a percentage of the amount of plan participant's assets invested in the fund. *Id.* As next explained, Plaintiff claims some of the Plan's expense ratios were too high. *See infra* at 6, 17-23.

---

[4] *Id.* at 22.

[5] *Id.*

[6] *Id.*

**C.      Plaintiff's Claims**

In Count I, the Complaint asserts that Southwest Research breached its fiduciary duty of prudence under ERISA, 29 U.S.C. § 1104(a)(1)(A), by offering certain imprudent investment options in the Plan's line-up.  Out of the dozens of investment options offered by the Plan, the Complaint only challenges seven.

First, the Complaint alleges that three actively managed mutual funds in the Plan—(1) the TIAA-CREF Mid-Cap Value, (2) the TIAA-CREF Mid-Cap Growth, and (3) the TIAA-CREF Large Cap Value—underperformed their prospectus benchmarks and a handful of other funds Plaintiff selected from the same Morningstar "category."  *See* Compl. ¶¶ 44-57.  Second, the Complaint alleges that four passively managed index options were more expensive than other index funds from other investment companies: (1) the TIAA-CREF Bond Index, (2) the TIAA-CREF Emerging Markets Equity Index, (3) the CREF Equity Index, and (4) the TIAA-CREF S&P 500 Index.  *See id.* ¶¶ 58-65.  Three of these are mutual funds, but the fourth—the CREF Equity Index—is a variable annuity product.[7]  These bareboned allegations related to a small subset of investments are insufficient to state a viable breach-of-fiduciary-duty claim under ERISA, as illustrated below.

In Count II, the Complaint attempts to bootstrap another claim entirely derivative of Count I, alleging that Southwest Research failed to monitor the fiduciaries in charge of overseeing the Plan.  Compl. ¶¶ 84-88.  Count II thus fails along with Count I.

## III.      ARGUMENT

**A.      Legal Standard**

To survive a motion to dismiss, a plaintiff must plead "sufficient factual matter" to "state

---

[7] Teachers Insurance and Annuity Association of America, *CREF Equity Index Account,* (July 30, 2023), https://fluenttech.tiaa.org/pdf/factsheet/194408258.pdf.

a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). To be "plausible," a plaintiff's allegations must raise "more than the mere possibility of misconduct." *Id*. at 679; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("speculative" allegations are insufficient). "When faced with two possible explanations for a defendant's conduct, only one of which results in liability, a plaintiff cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation." *JSW Steel (USA) Inc. v. Nucor Corp.*, 586 F. Supp. 3d 585, 595 (S.D. Tex. 2022) (quoting *Twombly*, 550 U.S. at 557).

To state a claim for breach of ERISA's duty of prudence, a plaintiff must offer well-pled factual allegations showing that the fiduciary failed to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). "The focus of the inquiry is how the fiduciary acted, not whether his investments succeeded or failed." *Kirschbaum*, 526 F.3d at 253; *see also Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 541-42 (5th Cir. 2016) (emphasizing that ERISA's "test of fiduciary prudence 'is one of conduct, not results'").

ERISA "does not give the federal courts a broad license to second-guess the investment decisions of retirement plans." *CommonSpirit Health*, 37 F.4th at 1162. Notwithstanding, fiduciaries often find themselves "between a rock and a hard place," facing litigation no matter what decision they make. *Dudenhoeffer*, 573 U.S. at 424. A motion to dismiss is therefore an "important mechanism for weeding out meritless claims." *Id*. at 425. The Court must apply "careful, context-sensitive scrutiny" when evaluating ERISA claims at the pleadings stage. *Id.*

Plaintiff must allege facts sufficient to allow the inference that the fiduciary process was

unlawful. *CommonSpirit Health*, 37 F.4th at 1166 (affirming Rule 12 dismissal of imprudence claim; explaining "after-the-fact performance gap between benchmark comparators [does not by itself] violate[] the *process-driven* duties imposed on ERISA fund managers") (emphasis added); *Meiners*, 898 F.3d at 823 (same); *Albert*, 47 F.4th at 579 (same).  To do so, a plaintiff must point to information "at the time of the investment without the benefit of hindsight." *Locascio v. Fluor Corp.*, 2023 WL 320000, at \*6 (N.D. Tex. Jan. 18, 2023) (*citing Metler v. Graham*, 112 F.3d 207, 209 (5th Cir. 1997)).  And in all events, recognizing that ERISA fiduciaries will often face "difficult tradeoffs," the Court "must give due regard to the range of reasonable judgments a fiduciary may make," even in the Rule 12 context. *Hughes*, 142 S. Ct. at 742.  It is not enough for a plaintiff to allege that a better-performing investment existed in the marketplace; plaintiffs can do that in virtually every case. *CommonSpirit Health*, 37 F.4th at 1166; *see also Perkins v. United Surgical Partners Int'l Inc.*, 2022 WL 824839, at \*5 (N.D. Tex. Mar. 18, 2022) (dismissing imprudence claim under Rule 12 and noting "the prudence standard normally focuses on the fiduciary's conduct in making investment decisions, and not on the results").

> **B.**    **Plaintiff's Allegations That Three Plan Investment Options Underperformed Do Not State a Claim.**

Applying these principles, Plaintiff has failed to state an actionable breach-of-fiduciary-duty claim against Southwest Research by asserting that a handful of Plan investments either underperformed their prospectus benchmark or Plaintiff's alleged comparator funds.

> **1.**    **The Complaint's Performance-Only Allegations Do Not Create an Inference of Imprudence as a Matter of Law as Is Required to Plausibly Allege a Fiduciary-Breach Claim.**

Plaintiff first claims that Southwest Research breached its fiduciary duties by offering three actively managed TIAA funds that allegedly underperformed their prospectus benchmarks and a few other funds selected by Plaintiff.  These allegations do not state a fiduciary-breach claim.

As a general matter, the Complaint does not include any well-pled allegations to show that these three investment options were outside the "range of reasonable judgments" that other plan fiduciaries make. *Hughes*, 142 S. Ct. at 742. In other words, the Complaint fails to allege that no reasonable fiduciaries offered these funds as investment options for their plan participants. Nor could it. Each of the three funds continues to have over a billion dollars in assets under management—with one fund having nearly *$5 billion*. These facts demonstrate that other "prudent investors under similar circumstances" deem the challenged funds well within the "range of reasonable" prudent investments.[8]

The Complaint fails for additional reasons. Plaintiff's specific criticisms—which focus entirely on the alleged underperformance of three of the Plan's funds compared to a few hand-picked alternatives—do not allow any plausible *inference* of imprudence. Circuit authority has held, universally, that nothing in ERISA "requires a fiduciary to pick the best performing fund." *Meiners*, 898 F.3d at 822-23; *CommonSpirit Health*, 37 F.4th at 1165; *Forman*, 40 F.4th at 443; *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020); *Laboy v. Bd. Of Trs. Of Bldg. Serv.*, 513 F. App'x 78, 79-80 (2d Cir. 2013) (affirming 12(b)(6) dismissal because plaintiff's allegations of poor performance alone did not state a claim for fiduciary breach).[9]

---

[8] As of this filing, the TIAA-CREF Mid-Cap Value fund (TIMVX) reported more than $1.7 billion in assets under management (https://www.nuveen.com/en-us/mutual-funds/tiaa-cref-mid-cap-value-fund?shareclass=Institutional), the TIAA-CREF Mid-Cap Growth fund (TRPWX) reported more than $1.1 billion in assets under management (https://www.nuveen.com/en-us/mutual-funds/tiaa-cref-mid-cap-growth-fund?shareclass=Institutional), and the TIAA-CREF Large Cap Value fund (TRLIX) reported over $4.8 billion in assets under management (https://www.nuveen.com/en-us/mutual-funds/tiaa-cref-large-cap-value-fund?shareclass=Advisor).

[9] *C.f., Jenkins v. Yager*, 444 F.3d 916, 926 (7th Cir. 2006) (holding that a fiduciary may prudently select "funds with long-term growth potential and . . . stay with those . . . funds even during years of lower performance"); *White,* 2017 WL 2352137, at *20 (noting fiduciaries often have "long-range investment strateg[ies]," which "plainly permit" the "common practice of retaining investments through periods of under-performance").

---

Therefore, courts have held allegations that some other funds performed better do not state a plausible fiduciary-breach claim. *See, e.g., Meiners*, 898 F.3d at 822-23 ("[t]he fact that one fund with a different investment strategy ultimately performed better does not establish anything about whether the [challenged funds] were an imprudent choice at the outset."); *CommonSpirit Health*, 37 F.4th at 1166 ("a showing of imprudence [does not] come down to simply pointing to a fund with better performance"); *Forman*, 40 F.4th at 443 (same); *White v. Chevron Corp.*, 752 F. App'x 453, 455 (9th Cir. 2018) (affirming Rule 12(b)(6) dismissal of similar fiduciary-breach investment-performance claims because they "showed only that [the defendant] could have chosen different vehicles of investment that performed better during the relevant period").[10] In *Forman*, the Sixth Circuit elaborated on these principles, explaining:

> Disappointing performance in the near term and higher costs do not by themselves show "deficient decision-making," especially when we account for competing explanations and other common sense aspects of long-term investments. Different services, investment strategies, and investor preferences invariably lead to a spectrum of options—and in turn a spectrum of reasonable fee structures and performance outcomes. As a result, side-by-side comparisons 'of how two funds performed in a narrow window of time, with no consideration of their distinct objectives, will not tell a fiduciary which is the more prudent long-term investment option.

40 F.4th at 443 (citations omitted). *C.f. Kirschbaum*, 526 F.3d at 253-54 (recognizing "[r]etirement investing" involves a "long-term horizon").

The Northern District of Texas agrees. In dismissing a similar fiduciary-breach claim under Rule 12(b)(6), Judge Starr held that "[p]roviding the Court with data from other investments

---

[10] A copy of the operative complaint in *White* is attached as Ex. 1, so the Court can see how similar the allegations in that case are to those alleged by Plaintiff here. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record'") (*quoting Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007)).

that outperformed the [plan's] investments does little to aid the Court in evaluating the fiduciary process." *Locascio* 2023 WL 320000, at *6.  Expanding on this principle, Judge Starr held: "Put bluntly, a flawed fiduciary process can result in great returns while a diligent and complete fiduciary process can result in underperformance." *Id.*

The recent decision in *Beldock v. Microsoft Corporation* is further instructive on this point. In that case, the plaintiffs alleged that the defendants breached their fiduciary duties under ERISA by offering a suite of target-date funds that underperformed four other comparator target-date-fund suites (comprising over 65% of the target-date-fund market) and the S&P Target Date Index – allegedly "an appropriate, meaningful benchmark comparator for" the challenged target-date funds.  2023 WL 3058016, at *1-2.  The complaint (and amended complaint) included charts and graphs showing the relative performance and holdings of the challenged funds and comparators. *Id.* (describing complaint's "charts and tables").  The plaintiffs also alleged that the challenged funds underperformed even after accounting for their different risks and holdings, as reflected in the lower "Sharpe ratio" of the challenged funds compared to the four comparator funds and the S&P Target Date Index.  *Id.*  Judge Robart rejected these allegations as insufficient to state a claim, recognizing that "courts across the country have rejected claims for breach of the fiduciary duty of prudence under ERISA where the plaintiffs allege nothing more than underperformance relative to other investment vehicles."[11] *Id.* at *3 (collecting cases).

---

[11] *See also Bracalente v. Cisco Syst., Inc.*, 2023 WL 5184138, at *4 (N.D. Cal. Aug. 11, 2023) (dismissing similar performance-based imprudence claim and holding "the case law teaches that underperformance *alone* cannot substantiate an ERISA imprudence claim" as plaintiffs' "'underperformance-only' theory [] would flatten the nuanced prudence evaluation into a one-dimensional comparison that considers only the funds' [] performance data") (emphasis in original); *Luckett v. Wintrust Fin. Corp.*, 2023 WL 4549620, at *4 (N.D. Ill. July 14, 2023) (holding "courts do not 'infer imprudence every time a fiduciary retains a fund that fails to turn in best-in-class performance for any specific period," and "underperformance is not imprudence, given that prudence is evaluated as part of a prudent, whole-portfolio, investment strategy") (citations omitted); *Anderson v. Advance Pubs., Inc.*, 2023 WL 3976411, at *4 (June 13, 2023)

---

The same result is warranted here.    Plaintiff alleges nothing more than mere underperformance of three of the Plan's funds relative to a few others identified in the Complaint. Compl. ¶¶ 44-57.  The law is clear: such allegations are not enough to infer an imprudent fiduciary *process*, particularly when there are no allegations that the fiduciaries acted outside the range of "reasonable judgments."  *Hughes,* 142 S. Ct. at 742.  Plaintiff's allegations do not state a claim and should be dismissed for this reason alone.

> ### 2.    Plaintiff's Underperformance Allegations Fail for Additional Reasons, Each of Which Independently Compels Dismissal.

Though the Court need not even reach these issues, Plaintiff's underperformance allegations also fail for three additional reasons—each of which also independently compels dismissal: (1) Plaintiff does not offer meaningful comparators; (2) Plaintiff does not allege sufficient underperformance; and (3) Plaintiff ignores the long-term nature of the investments.

> ### a)    Plaintiff's Underperformance Allegations Fail Because They Do Not Offer Meaningful Comparators for the Challenged Funds.

First, even if Plaintiff's underperformance-only allegations could support an inference of imprudence (they cannot), Plaintiff fails to offer meaningful comparators for the challenged funds. This is an entirely independent basis for dismissal.  Every circuit in the country has held that to plausibly allege a "prudent fiduciary in like circumstances" would have selected a different fund, a plaintiff must provide a "sound basis" for any performance comparison—*i.e.*, a "meaningful benchmark" for each of the challenged investments.  *Meiners,* 898 F.3d at 822.[12]  Acknowledging

---

("allegations of underperformance are insufficient to support [p]laintiff's cause of action for [imprudence]"); *Hall v. Cap. One Fin. Corp.,* 2023 WL 2333304, at *6 (E.D. Va. Mar. 1, 2023) ("ERISA simply does not provide a cause of action for fiduciary breaches based solely on a fund participant's disappointment in the fund's performance.").

[12] *See also Matousek v. MidAmerican Energy, Co.,* 51 F.4th 274, 277 (8th Cir. 2022) ("[T]he key to nudging an inference of imprudence from possible to plausible is providing a 'sound basis for comparison—a meaningful benchmark'—not just alleging that 'costs are too high, or returns are

---

this weight of authority, the Tenth Circuit just two weeks ago held that a plaintiff "has the burden to allege a meaningful benchmark." *Matney,* 2023 WL 5731996, at \*6-7. This is a "challenging" requirement that involves more than identifying alternatives with "some similarities" to the challenged funds. *Meiners,* 898 F.3d at 823; *Matney,* 2023 WL 5731996, at \*12 ("absent facts alleging the [comparator funds] are similar enough to the Plan's funds, the complaint fails to supply a meaningful benchmark for comparison"); *Matousek,* 51 F.4th at 280 (plaintiff must allege a "like-for-like comparison"). Rather, it requires Plaintiff to *plead facts* showing that each of his proposed alternatives had similar investment strategies, asset allocations, and risk profiles to the challenged TIAA funds to which they are being compared. *Id.*[13]

The Eighth Circuit's precedent is instructive on this point. In *Meiners*, the Eighth Circuit held that a proposed comparator fund was not a meaningful benchmark to the challenged fund because it had a slightly different allocation to bonds than the challenged fund. 898 F.3d at 823 n.2. The Eighth Circuit again rejected a similar claim in *Matousek* a few years later, this time because while the plaintiffs alleged that the comparator funds were in the same "peer group," there were no allegations that the peer group funds held "similar securities, have similar investments strategies, and reflect a similar risk profile." 51 F.4th at 274.

The Complaint fails this standard. Here, Plaintiff alleges that the comparator funds use the

---

too low.'") (citation omitted); *CommonSpirit Health,* 37 F.4th at 1167; *Davis,* 2022 WL 1055557, at \*2 n.1; *Locascio,* 2023 WL 320000, at \*6 (plaintiff "needs to provide meaningful comparison in his pleadings to demonstrate that his selected funds are sufficiently similar benchmarks") (J. Starr); *Perkins,* 2022 WL 824839, at \*6 (dismissing imprudence claim, in part because plaintiffs failed to plead a "meaningful benchmark") (J. Starr).

[13] *See also Wehner v. Genentech, Inc.,* 2021 WL 507599, at \*10 (N.D. Cal. Feb. 9, 2021) (dismissing claims because complaint lacked allegations establishing similarity in "styles and strategies" between challenged funds and allegedly prudent alternatives); *Larson v. Allina Health Sys.,* 350 F. Supp. 3d 780, 799 (D. Minn. 2018) (dismissing a claim where plaintiffs "only pled a market alternative that is *similar*, but not *identical*, to the Fidelity shares that were actually included in the Plan") (emphasis added).

same benchmark, are in the same Morningstar category, and have approximately the same *number* of holdings. *See* Compl. ¶ 45, 48, 51. While that might mean the funds share "some similarities," that is not enough. As the Eighth Circuit held in *Meiners*, "[w]e found that different shares *of the same fund* were a meaningful benchmark, but [plaintiff] does not match that benchmark by alleging that cheaper alternative investments with some similarities exist in the marketplace. Such an expansion of [our precedent] is inappropriate because it permits plaintiffs to dodge the requirement for a meaningful benchmark by merely finding a less expensive alternative fund or two with some similarity." *Id.*; *see also Matousek*, 51 F.4th at 281.

In particular, Plaintiff does not allege that the comparator funds have the same investment strategies, or invest in the same industries as the challenged funds, or even take on the same risks. These differences matter. Making a "side-by-side comparison of how two funds performed . . . with no consideration of their *distinct objectives* is unhelpful for determining which is the more prudent choice." *Matney*, 2023 WL 5731996, at *12 (citation omitted). After all, saying that two funds invest in companies with "large market capitalizations" or "medium market capitalizations," or "growth" stocks or "value" stocks, Compl. ¶¶ 45-57, says nothing about whether the funds invest in "large" or "medium" technology companies, or healthcare companies, or real estate companies, or banks, or fintech companies or other financial services companies, or U.S. companies with significant international exposure. Merely sharing some similarities is not enough to plead a "meaningful benchmark." *Meiners*, 898 F.3d at 823 & n.2 (a plaintiff cannot "dodge the requirement for a meaningful benchmark by merely finding a less expensive [or better performing] alternative fund or two with some similarity"); *Davis*, 960 F.3d at 485 (affirming Rule 12(b)(6) dismissal where the challenged fund had "around 30% of its portfolio invested in international securities" but the comparator funds "have a lower percentage of international

stocks."); *Matousek* 51 F. 4th at  281 (affirming Rule 12(b)(6) dismissal of imprudence claim where "the composition of the peer groups remains a mystery"); *Luckett*, 2023 WL 4549620, at *3 (dismissing imprudence claim on Rule 12 because the challenged funds and alleged comparator funds had different glide paths); *Hall*, 2023 WL 2333304, at *6 (similar).[14]

### b)   *Plaintiff Does Not Allege Substantial Underperformance Sufficient to Support an Inference of Imprudence*.

Second, the performance differences of which Plaintiff complains are not substantial enough to move his claim from "possible to plausible." *Iqbal*, 556 U.S. at 678. This is yet another independent basis to dismiss Plaintiff's underperformance claim. For example, the Complaint alleges that the TIAA-CREF Large Cap Value fund underperformed its benchmark by less than 1% during five out of the seven performance periods alleged. *See* Compl. ¶ 51. In 2016, for example, the TIAA-CREF Large Cap Value fund's 10-year returns trailed its benchmark by just 0.02%. *Id.* The Complaint alleges the fund trailed its benchmark *at most* by 1.28% in 2020. *Id.*

Courts routinely hold that such modest performance differences are to be expected when evaluating investment options and do not infer an imprudent process. *See, e.g., Gonzales v. Northwell Health, Inc.*, 2022 WL 4639673, at *8 (S.D.N.Y. Sept. 30, 2022) (finding that underperformance ranging from 0.32% to 2.57% was "not the type of substantial underperformance . . . that gives rise to a plausible inference that a prudent fiduciary would have removed these funds from the plan's menu of options"); *Cho v. Prudential Ins. Co. of Am.*, 2021

---

[14] Pointing to a prospectus benchmark likewise does not satisfy the meaningful benchmark standard. These are merely market indices, which are not actually investment options. *See In re LinkedIn ERISA Litigation*, 2021 WL 5331448, *9 (C.D. Cal. Nov. 16, 2021) (granting 12(b)(6) motion to dismiss claim that actively managed fund underperformed its market index benchmark because the market index is not a meaningful benchmark for actively managed funds); *Wehner*, 2021 WL 507599, at *10; *Davis*, 960 F.3d at 485 n.4 (finding that a market index listed in the ERISA plan's disclosures was not a meaningful benchmark for a breach of fiduciary duty claim because the index "is not a fund, much less an actively managed one").

WL 4438186, at *9 (D.N.J. Sept. 27, 2021) (plaintiffs did not allege "sufficiently substantial" underperformance to state a claim as to fund for which "five-year trailing performance had underperformance percentages ranging from .07% to 3.71%," and "ten-year trailing performance reflected underperformance ranging from 1.19% to 2.86%"); *Forman v. TriHealth, Inc.*, 563 F. Supp. 3d 753 (S.D. Ohio 2021) (finding underperformance ranging from 1.00% to "just over" 2.00% was "simply too small to raise a plausible breach of the fiduciary duty claim"), *aff'd in relevant part*, 40 F.4th 443 (6th Cir. 2022); *Bekker v. Neuberger Berman Grp. LLC*, 2018 WL 4636841, at *4 (S.D.N.Y. Sept. 27, 2018) (plaintiff failed to state a claim for imprudence based on retention of a fund that underperformed its benchmark by 4.48% over a ten-year period). This Court should reach the same conclusion.

### c) *Plaintiff's Underperformance Allegations Ignore the Long-Term Nature of the Challenged Investments.*

Third, Plaintiff's allegations focus exclusively on ten-year performance, ignoring the long-term nature of retirement-plan investing. *See* Compl. ¶¶ 44-57; *see also supra* at 3 (discussing the Fifth Circuit's recognition that "[r]etirement investing" involves a "long-term horizon"). As the Sixth Circuit explained regarding similar allegations about five-year performance differences:

> Merely pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision—largely a process-based inquiry—that breaches a fiduciary duty. Precipitously selling a well-constructed portfolio in response to disappointing short-term losses, as it happens, is one of the surest ways to frustrate the long-term growth of a retirement plan.

*CommonSpirit Health*, 37 F.4th at 1166. The Sixth Circuit further explained that "[a]ny other rule would mean that every actively managed fund with below-average results over the most recent five-year period would create a plausible ERISA violation." *Id.* "Unless and until it becomes feasible to have all actively managed funds perform above average, that would lead to the disappearance of this option in ERISA plans." *Id.*

---

Plaintiff's allegations here have the same problem and fail for the same reasons. *See Beldock*, 2023 WL 3058016, at \*1-2 (rejecting claims based on rolling five-year performance covering over eleven years); *Hall*, 2023 WL 2333304, at \*6 (same). In short, the Complaint fails to allege facts supporting an inference that the three challenged TIAA-CREF funds fell outside the range of reasonable investments available to the Plan.

**C.     Plaintiff's Allegations That Four Plan Investment Options Were "Too Expensive" Does Not State a Claim.**

**1.     The Complaint's Criticism That Four Plan Investments Were More Expensive Than Other Funds Does Not Create an Inference of Imprudence Sufficient to Allege a Violation of ERISA.**

Plaintiff also alleges that four TIAA index funds offered by the Plan are imprudent because they are allegedly more expensive than a handful of other funds. *See* Compl. ¶¶ 58-65. These allegations likewise fail to state an actionable imprudence claim.

First, Plaintiff fails to allege that the fees for these investment options were outside the "range of reasonable judgments" made by other plan fiduciaries or that other plan fiduciaries did not offer these funds as investment options for their plans. *Hughes*, 142 S. Ct. at 742. To the contrary, the TIAA index funds hold even more in assets under management than the challenged actively managed TIAA funds—between *$5.6 billion and $21.7 billion* per fund—demonstrating that other prudent investors believe they are reasonable and appropriate investments.[15] This fact

___

[15] As of this filing, the TIAA-CREF Bond Index (TBIIX) reported more than $21.5 billion in assets under management (https://www.nuveen.com/en-us/mutual-funds/tiaa-cref-bond-index-fund?shareclass=Institutional), the TIAA-CREF Emerging Markets Equity Index (TEQLX) reported more than $5.6 billion in assets under management (https://www.nuveen.com/en-us/mutual-funds/tiaa-cref-emerging-markets-equity-index-fund?shareclass=Institutional), the CREF Equity Index (QCEQIX) reported more than $21.7 billion in assets under management (https://fluenttech.tiaa.org/pdf/factsheet/194408258.pdf), and the TIAA-CREF S&P 500 Index (TISPX) reported more than $8.6 billion in assets under management (https://www.nuveen.com/en-us/mutual-funds/tiaa-cref-s-p-500-index-fund?shareclass=Institutional).

alone dooms Plaintiff's claim.

Second, as a matter law, Plaintiff cannot state an imprudence claim by merely alleging there are a few other funds in the market that cost less. Plaintiff's allegations regarding the TIAA-CREF Emerging Markets fund identifies only *one* other fund that allegedly costs less. Compl. ¶ 64. As for the others, Plaintiff identifies two or three cheaper funds. Even if these paltry comparisons were enough to allege an imprudence claim (they are not), ERISA does not require fiduciaries to choose the least-expensive investment. As Judge Starr put it in *Perkins* when dismissing a similar imprudence claim under Rule 12(b)(6): "the mere existence of lower-cost alternatives does not necessarily bring about a plausible claim." 2023 WL 289953, at *5. Likewise, as the Eighth Circuit explained when rejecting a similar claim, fiduciaries are not "required to pick the lowest-cost fund, particularly when the expense ratio differences are small – here, between just .06 and .11 percentage points." *Davis*, 960 F.3d at 486. The fee differences alleged by Plaintiff are just as small as those in *Davis* (Compl. ¶ 64), and Plaintiff's claim should therefore be dismissed for the same reasons. *See also Hecker*, 556 F.3d at 586; *Meiners*, 898 F.3d at 823-24; *Albert*, 47 F.4th at 580; *CommonSpirit Health*, 37 F.4th at 1169; *PBGC ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc. ("St. Vincent")*, 712 F.3d 705, 718-19 (2d Cir. 2013); *White*, 752 F. App'x at 455,

Indeed, any other rule would mean that a plaintiff could state a claim against fiduciaries of every plan that offered most of plaintiff's cherry-picked comparator funds, because in each case, one comparator is cheaper than the others. *See, e.g.*, Compl. ¶ 64 (alleging the Vanguard Russell 3000 Index I fund charges 0.08% but the iShares Total US Stock Market Index K fund charges only 0.03%); *id.* (alleging the iShares US Aggregate Bond fund charges 0.05% but the Fidelity US Bond fund charges only 0.02%). And, in turn, all plan fiduciaries of every plan would have to

offer the same "cheapest" fund, irrespective of any other investing metrics.

That is not the law.  A plaintiff cannot state a fiduciary-breach claim merely by alleging that a few other funds cost less.  *See supra* at 17-18 (discussing cases).  Plaintiff's allegations that four Plan investments cost more than a handful of other index funds does not state a claim.

> **2.    The Complaint Does Not Allege Facts Demonstrating That the Comparator Funds Are Meaningful Benchmarks for the Challenged Funds.**

As with their underperformance allegations, Plaintiff's fee allegations also fail because the Complaint does not allege facts demonstrating that his cherry-picked cheaper comparators are "meaningful benchmarks" for the challenged investments.  *See supra* at 12-15.

Southwest Research acknowledges Plaintiff's allegations that the comparator funds generally track similar indices as the challenged investments.  But that is not sufficient, because it says nothing about any other features of the investments (the challenged ones or the comparators) or the strategy used by each fund to achieve its investment objective.  And this context matters. *Perkins*, 2023 WL 2899539, at *6 (J. Starr) (explaining that "[p]leadings that demonstrate [investments] [are] *identical* in every single way except price provide some context for the Court to see the plausibility of imprudence claims; however the plaintiffs did not plead this . . .") (emphasis added).

Plaintiff challenges the CREF Equity Index R3 as too expensive compared to the iShares Total US Stock Market Idx K and the Vanguard Russell 300 Index I mutual funds.  Compl. ¶ 64. But, unlike the comparator funds, the CREF Equity Index R3 is not even a mutual fund; it is a *variable annuity product*.[16]  This means that it "provides participants the option to convert all or a

---

[16] Teachers Insurance and Annuity Association of America, *CREF Equity Index Account,* (July 30, 2023), https://fluenttech.tiaa.org/pdf/factsheet/194408258.pdf.

portion of their accumulations into lifetime income."[17]  The Eighth Circuit in *Davis* affirmed Rule 12(b)(6) dismissal of a virtually identical claim comparing a similar CREF annuity product to an index mutual fund, explaining: "[t]he *biggest difference*, however, is that variable annuities can provide a steady stream of income at retirement—what TIAA calls 'income for your life'—and mutual funds do not."  *Davis*, 960 F.3d at 485.  Even if stock index funds will typically outperform a variable annuity like CREF Stock Account, as the complaint alleges, it is not imprudent to provide options with differing features from which to choose, regardless of whether some perform better than others.  *Id.*  The same is true here, and Plaintiff's challenge to this fund fails for the same reason.

The Complaint compares the TIAA-CREF Bond Index to three other funds, none of which is a meaningful benchmark.  Compl. ¶ 64.  The first comparator, the Vanguard Total Bond Market Index, tracks the Bloomberg U.S. Aggregate *Float Adjusted Index*, whereas the TIAA-CREF Bond Index fund in the Plan tracks the Bloomberg U.S. Aggregate *Bond Index*.[18]  The second comparator—the Fidelity U.S. Bond Index—uses a "leveraging" strategy by investing in derivative securities "such as swaps (interest rate, total return, and credit default), options, and futures contracts . . . to adjust the fund's risk exposure."[19]  Finally, the Complaint compares the TIAA-CREF Bond Index to the iShares U.S. Aggregate Bond Index, which invests "at least 90%" of its assets in securities comprising the Bloomberg U.S. Aggregate Index,[20] unlike the TIAA-

---

[17] *Id.*

[18] *See* Ex. 2, Vanguard Total Bond Market Index Summary Prospectus (April 28, 2023), at 2 ("The Fund employs an indexing investment approach designed to track the performance of the Bloomberg U.S. Aggregate *Float Adjusted Index*."); Ex. 3, TIAA-CREF Bond Index Summary Prospectus (Aug. 1, 2023), at 3 ("[T]he Fund invests at least 80% of its assets in bonds within its benchmark and portfolio tracking index, the Bloomberg U.S. Aggregate Bond Index.").

[19] *See* Ex. 4, Fidelity U.S. Bond Index Summary Prospectus (Oct. 29, 2022), at 3.

[20] *See* Ex. 5, iShares U.S. Aggregate Bond Index Prospectus (April 28, 2023), at 4.

CREF Bond Index, which typically invests only "80% of its assets in bonds within its benchmark and portfolio tracking index."[21]    Absent a comparable investment strategy, these are not "meaningful benchmarks."

The Complaint compares the TIAA-CREF Emerging Markets Equity Index fund to just one other fund, the Fidelity Emerging Markets Index fund. Compl. ¶ 64. Although they are both emerging-markets funds and have similar names, the TIAA-CREF Emerging Markets Index invests in different countries and in different percentages than the Fidelity Emerging Markets Index fund. For example, the TIAA-CREF fund has 26.2% of its portfolio invested in China equities, nothing in Cayman Island equities, and a negligible amount in U.S. Equities (if any).[22] By contrast, the Fidelity fund has only 11.1% in China, 13.5% in the Cayman Islands, and 3.1% in the United States.[23] That is not to say that one is better or worse than the other, but it does mean that they are not meaningful benchmarks for each other. *Meiners*, 898 F.3d at 823 & n.2; *Davis,* 960 F.3d at 485. *See also* supra at 12-15.

Lastly, Plaintiff alleges that the TIAA-CREF S&P 500 Index fund uses the same benchmark as three other S&P 500 index funds. Compl. ¶ 64. The Complaint, however, alleges no other facts about the challenged TIAA-CREF fund or the comparators, aside from their fees. But even assuming that each of these funds is a meaningful benchmark for the others, these allegations highlight the fundamental problem with Plaintiff's theory, because it would mean that a plaintiff could sue *every* plan fiduciary that offered the TIAA-CREF fund—or even a plan that

---

[21] Ex. 3, TIAA-CREF Bond Index Summary Prospectus (August 1, 2023), at 3 ("the Fund invests at least 80% of its assets in bonds within its benchmark and portfolio tracking index, the Bloomberg U.S. Aggregate Bond Index.").

[22] Ex. 6, TIAA-CREF Emerging Markets Equity Index Annual Report (Oct. 31, 2022), at 25.

[23] Ex. 7, Fidelity Emerging Markets Index Annual Report (Oct. 31, 2022), at 6.

offered two of Plaintiff's own comparators (the Vanguard Institutional Index fund or the iShares S&P 500 Index fund)—because they all allegedly cost more than the cheapest comparator fund, the Fidelity 500 Index fund that charged 0.02%.  Compl. ¶ 64 (alleging that the Vanguard Institutional Index I fund charges 0.035%, the iShares fund charges 0.03% or 0.04%, but the Fidelity 500 Index fund only charges 0.02%).  *Davis*, 960 F.3d at 486 (affirming Rule 12(b)(6) dismissal of similar challenge, explaining that fiduciaries are not "required to pick the lowest-cost fund, particularly when the expense ratio differences are small—here, between just .06 and .11 percentage points").

In short, Plaintiff's allegations that a few Plan investment options cost more than other funds available in the market does not state a claim.

**D.  Plaintiff's Allegation That the Plan Offered TIAA-Affiliated Investments Does Not Create an Inference of Imprudence.**

Plaintiff also alleges that the Plan offered only TIAA-affiliated funds.  Compl. ¶¶ 33-43. That does not state a claim, nor does it support the allegations discussed above.

Although the Complaint tries to suggest otherwise, there is nothing remarkable about Southwest Research engaging TIAA to provide investment options for the Plan.  Indeed, the Department of Labor has noted a plan's use of a single investment provider is commonplace, and that "[i]n many plans, one provider may offer some or all of the services and investment options . . . ."[24]  Unsurprisingly, then, courts reject the allegation that a plan relied on a single fund manager as insufficient to support an imprudence claim.  *See, e.g.*, *Albert*, 47 F.4th at 583; *Hecker*, 556 F.3d at 586.  As the Seventh Circuit explained in *Hecker*:

---

[24] Dep't of Labor, Employee Benefits Security Administration, *A Look at 401(k) Plan Fees,* at 3 (Dec. 2019) ("DOL Fee Publication"), https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/our-activities/resource-center/publications/a-look-at-401k-plan-fees.pdf (last visited Sept. 15, 2023) (cited by Compl. ¶ 55, n.16).

> As for the allegation that Deere improperly limited the investment options to Fidelity mutual funds, we find no statute or regulation prohibiting a fiduciary from selecting funds from one management company. A fiduciary must behave like a prudent investor under similar circumstances; many prudent investors limit themselves to funds offered by one company and diversify within the available investment options.

*Hecker*, 556 F.3d at 586. In the end, Plaintiff merely alleges that Southwest Research did what any number of other retirement plan sponsors do—*i.e.*, use a recordkeeper that supplies its own investment options. That is the same allegation made and rejected in *Hecker*. It should be rejected here too.

Plaintiff's allegation that TIAA's "behavior" is "self-interested" does not save his claim. Compl. ¶ 38. To state the obvious, TIAA is not a defendant in this case and is not alleged to be a fiduciary for the Southwest Research Plan. TIAA's alleged motivation (or lack thereof) is irrelevant to whether Plaintiff's allegations state a claim against the only defendant in this case: Southwest Research. *Albert*, 47 F.4th at 583 (affirming dismissal of similar claim: "[T]o the extent that there is anything untoward about a company encouraging a customer to use its subsidiary's services, Fidelity is neither a named defendant nor a fiduciary.").

For these reasons, Plaintiff's fiduciary-breach claim fails as a matter of law and should be dismissed.

### E.      Plaintiff Fails to State a Failure-to-Monitor Claim.

In Count II, Plaintiff alleges that Southwest Research failed to adequately monitor other Plan fiduciaries with respect to the Plan's investment options. *See* Compl. ¶¶ 84-88. But Plaintiff's failure-to-monitor claim is a derivative theory that collapses with his predicate fiduciary-breach claim. *See Singh v. RadioShack Corp.*, 882 F.3d 137, 150 (5th Cir. 2018) (holding that duty-to-monitor claims recognized by other courts inherently require a breach of duty by the appointed fiduciary and because the committee did not breach any duty to the plan, plaintiffs' duty-

to-monitor claims against the director defendants collapse)*; see also Camera v. Dell Inc.*, 2014 WL 960897, at \*5 (W.D. Tex. Feb. 26, 2014) ("[Plaintiff] has failed to plead a plausible breach-of-fiduciary-duty claim against any defendant, and therefore cannot maintain a derivative failure-to-monitor claim.").[25]  Therefore, Plaintiff's failure-to-monitor claim should be dismissed alongside Plaintiff's fiduciary-breach claim.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Southwest Research respectfully requests that the Court dismiss the Complaint in its entirety and with prejudice.

---

[25] It bears noting the Fifth Circuit "has 'never recognized [a] theory of ERISA fiduciary liability' that holds corporate directors personally liable for failing to monitor fiduciaries[.]" *Singh*, 882 F.3d at 150 (quoting *Perez v. Bruister*, 823 F.3d 250, 260 n.10 (5th Cir. 2016)).

---

Dated:  September 15, 2023

By:  */s/ Lauren A. Valkenaar*
Lauren A. Valkenaar
Texas Bar No. 24088570
CHASNOFF MUNGIA VALKENAAR
PEPPING & STRIBLING, LLP
1020 N.E. Loop 410, Suite 150
San Antonio, Texas 78209
Telephone: +1.210.469.4155
Facsimile: +1.210.855.9898
lvalkenaar@chasnoffstribling.com

*/s/ David J. Levy*
David J. Levy
Texas Bar No. 12264850
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, Texas  77002
Telephone: +1.713.890-5000
Facsimile:  +1.713.890.5001
david.levy@morganlewis.com

*/s/ Jeremy P. Blumenfeld*
Jeremy P. Blumenfeld (*pro hac vice*)
Jared R. Killen (*pro hac vice*)
Shelby M. Krafka (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921
Telephone: +1.215.963.5000
Facsimile:  +1.215.963.5001
jeremy.blumenfeld@morganlewis.com
jared.killeen@morganlewis.com
shelby.krafka@morganlewis.com

*/s/ Keri L. Engelman*
Keri L. Engelman, (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA  02110-1726
Telephone: +1.617.341.7700
Facsimile:  +1.617.341.7701
keri.engelman@morganlewis.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served via the Court's ECF/CM e-filing system to all counsel of record who are deemed to have consented to electronic service on this 15th day of September 2023.


*/s/*  Lauren A. Valkenaar